**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2575-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHRISTOPHER CARPENTER
JR.,

    Defendant-Appellant.

_____

Argued January 12, 2026 – Decided January 28, 2026

Before Judges Sabatino and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Municipal Appeal No. 17-11-24.

George T. Daggett argued the cause for appellant.

Jonathan E. McMeen, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Sahil K. Kabse, Acting Sussex County Prosecutor, attorney; Jonathan E. McMeen, of counsel and on the brief).

PER CURIAM

In this case, defendant Christopher Carpenter appeals from an April 16, 2025 Law Division order affirming his conviction and sentence after a trial in the Andover Joint Municipal Court for driving while intoxicated ("DWI"), N.J.S.A. 39:4-50; refusal to submit to breath samples, N.J.S.A. 39:4-50.2; and failing to install an interlock device, N.J.S.A. 39:4-50.19(a). Defendant relies on counsel's admission that he provided ineffective assistance at trial by failing to advise him of the State's favorable plea offer due to an injury counsel suffered on the day of trial before it commenced. We affirm.

The relevant facts are not disputed. In December 2023, defendant was charged with the following motor vehicle offenses out of Hampton Township: DWI; refusal to consent to submitting breath samples; and failure to install an interlock ignition device. Defendant retained his present counsel to represent him. Over the ensuing months, the State made several offers to defendant to settle the case on the following dates: April 30, June 8, July 7, August 12, September 18, and November 13, 2024 prior to the commencement of trial. Defendant rejected all plea offers and the matter proceeded to trial as scheduled on November 13.

At trial, the State presented the testimony of Troopers Alec Bowie and Jeffrey Pruden, who were working as a team on the day in question, and

introduced Trooper Pruden's body-worn camera footage of the encounter with defendant, the drinking/driving questionnaire, and the Miranda[1] Rights Form, which were entered into evidence, without objection. Trooper Bowie, the arresting officer and State's first witness, testified that he observed defendant in a pickup truck that was pulled over onto the side of the road with its engine running in the early morning hours of December 24, 2023. Trooper Bowie observed the driver, later identified as defendant, asleep in the driver seat. He further testified that he was initially unsuccessful in waking defendant, shut off the vehicle's engine, and removed him from the vehicle. He testified that defendant was "very slow. . . . he had watery eyes and bloodshot eyes." Trooper Bowie further testified he could smell the odor of an alcoholic beverage, but when he asked defendant if he had any alcohol to drink, defendant responded "no."

Trooper Bowie asked defendant to perform a series of roadside field sobriety tests, all of which was captured on Trooper Pruden's body-worn camera and later played for the court. Defendant was arrested and transported to the station.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

3

A-2575-24

Prior to Trooper Pruden's testimony, the parties stipulated that defendant was intoxicated at the time of his arrest. The separate charge of whether defendant refused the breathalyzer, however, remained pending before the court.

The State next presented the testimony of Trooper Pruden, who testified regarding the implied consent form he reviewed with defendant. Trooper Pruden recalled reading the Attorney General's statement for drinking and driving and breath testing to defendant and asking, "[w]ill you submit samples of your breath?" Defendant responded, "I'm trying to understand what is best for me." As a result of this response, Trooper Pruden read the remaining language in the additional paragraph stating, "[t]he law requires you to submit samples of your breath for breath testing. If you do not answer with any other than 'YES,' I will charge you with a refusal." Defendant responded, "I'm not trying to give you guys a hard time." Trooper Pruden further testified that defendant never directly answered "yes" or "no" to the question whether he would submit to breath testing, but in failing to respond in the affirmative, he charged defendant with refusal to submit to breath testing.

Defense counsel briefly crossed-examined Trooper Pruden and also asked for an adjournment of the proceedings to allow his client to pick up his daughter from school and for an opportunity to submit written summations. The court

denied the application and asked the parties to place their closing arguments on the record.

Following closing argument, the court issued an oral decision finding defendant guilty of all offenses as charged beyond a reasonable doubt. The court discussed the troopers' testimony regarding the roadside stop, including that defendant was found sleeping in a running vehicle, the body-worn camera evidence, showing defendant was unable to follow the troopers' commands, the parties' stipulation to defendant's intoxication, Trooper Pruden's testimony that defendant never consented to the breathalyzer test, defendant's driver's abstract showing that an interlock device was required to be installed in his vehicle by November 9, 2023, which defendant failed to do. After discussing the evidence, the court found defendant was convicted of all charges beyond a reasonable doubt and the court sentenced him as follows:

> As to the DWI [c]onviction . . . $757[ ] fine and fees, $33[ ] in costs, $50[ ] Violent Crimes Compensation penalty, $225[ ] DWI surcharge, $75[ ] Safe Neighborhood assessment, two-year driver's license suspension, thirty days of community service, two years ignition interlock device, and [forty-eight] hours in the [Intoxicated Driver Resource Center].
>
> []As to the Refusal to Consent to a Breath Test [c]onviction . . . $507[ ] fine and fees, $33[ ] in costs, $100[ ] Drunk Driving Enforcement Fund, and a one-

5

year driver's license suspension to run consecutive to the suspension on the DWI conviction.

[]As to the failure to install the ignition interlock device [c]onviction . . . $207[ ] fine and fees, $33 in costs, one-year driver's license suspension consecutive to both the DWI conviction suspension and the Refusal to Consent conviction suspension, and two-year ignition interlock device installation concurrent to the DWI conviction ignition interlock device requirement.

Within weeks, defendant moved before the municipal court for a new trial, citing counsel's medical issue.[2] More particularly, defendant averred that he was entitled to relief from his conviction and sentence due to trial counsel's injury, which occurred on the morning of trial, resulting in representation that was ineffective because counsel "was not all there." Defendant principally argued and counsel certified that he was ineffective by failing to explain the favorable terms of the State's plea offer, "not realizing all of the consequences," and as a result defendant received a sentence well beyond the one-year suspension offer the State had extended. Defendant offered as further proof of his ineffectiveness the trial record showing that his counsel repeatedly asked the same questions during the trial, prompting the court to correct him.

---

[2] The municipal court noted there was no brief submitted, only a certification of counsel, stating that he struck his head on the way to court and believes he suffered a concussion.

A-2575-24

The municipal court denied the motion and issued an oral decision finding no factual or legal basis to grant the relief sought. The court noted that, despite the relief sought, counsel's certification did not include any discussion of Strickland v. Washington, 466 U.S. 668 (1984). The court explained there is no doubt that counsel fell that day, however the plea offer "should have been taken six months ago if it was [going to] be taken at all," referring to the multiple times the plea offer had been extended to defendant in 2024. The court further stated that at no time during the trial did counsel indicate to the court that he was physically or mentally unable to proceed, request an adjournment, seek medical treatment, or report a concussion diagnosis.

Defendant appealed to the Law Division, arguing ineffective assistance by counsel and essentially seeking a new trial.[3] The Law Division judge acknowledged the "uniqueness of defense counsel's arguments," stating "[i]t's, essentially, a post-conviction relief argument that's styled as what had been a motion for a new trial." Defense counsel argued that he had in fact hit his head when he fell before trial in November 2024, and as a result he failed to explain

_____

[3] It is unclear whether this was an appeal from the municipal court's conviction and sentence of defendant, but we can fairly glean from the record that this was trial counsel's intent.

A-2575-24

to defendant that there was no defense to his motor vehicle charges, stating "[t]he case shouldn't have been tried. . . . There [were a lot] of things I should have said and I didn't." The State opposed the motion, arguing "there was nothing to support an ineffective assistance of counsel claim, and this is [unusual] because . . . [it's] not being filed by the defendant as having an ineffective assistance of counsel, it's being filed by [counsel] as being ineffective."

Following oral argument, the Law Division judge issued a detailed oral decision denying the application. The judge explained he had no doubt that counsel truly believed that he did not do the job for his client to the degree that he is normally capable of doing but acknowledged that is not the end of the inquiry. The judge relied on the municipal judge's findings in the motion for a new trial, including that there was no showing at all that counsel's performance was deficient and that his performance prejudiced defendant. The judge agreed that counsel's performance that day "was above any objective standard of reasonableness. He was competent, he was effective, he asked the appropriate questions, he explored issues." The judge found the "[t]he [s]uggestion that the record demonstrates that counsel was, to any significant degree, suffering from

A-2575-24

the effects of his fall to the point that it impacted his trial performance is belied by the record."

The Law Division judge next discussed counsel's argument that he did not adequately represent his client's interests by getting his client to accept the plea agreement the State was offering. On this point, the judge concluded only that defendant had multiple opportunities to take the plea before the trial date. Lastly, the judge noted that counsel did not disclose that he had any type of physical or mental issue on the day of trial, did not suggest in any way that he was not feeling well, request an adjournment, or seek medical attention. Whether viewed under Strickland or the new trial standard of manifest injustice, the judge remained unconvinced that relief was appropriate or that a new trial was warranted. Applying Strickland's two-part test, the judge noted again that counsel's performance was not deficient. The judge found persuasive the municipal court's statement that it would not have accepted the plea agreement on the day of trial and noted that it did not know whether counsel would have been able to prevail in having his client accept the plea offer when defendant had turned it down four previous times. The judge also noted that there appears to have been a trial strategy to potentially challenge the issue of defendant's

operation, or lack thereof, of the vehicle when troopers found him parked alongside the roadway.

The judge thus conducted a de novo review of the municipal trial record and concluded it was satisfied that all the elements of the drunk driving statute were found: defendant was intoxicated; and he was operating the vehicle. See State v. Thompson, 462 N.J. Super. 370, 375 (App. Div. 2020) (upholding a DWI conviction when a defendant is found running his vehicle's engine without moving). Turning to the refusal charge, the judge found probable cause for detaining defendant for the purpose of undergoing the breathalyzer and concluded that based on Trooper Pruden's actions in reading the Attorney General's statement, and defendant's refusal to set forth an affirmative answer, the trooper correctly charged defendant with refusal. The court concluded that the "State established all the elements for refusal beyond a reasonable doubt and the defendant is guilty of that charge."

On the failure to install the interlock device in his vehicle, the judge found based on Trooper Bowie's testimony and defendant's driving abstract—showing he was required to install the interlock device as of November 2023—that it is beyond dispute that defendant failed to install the interlock device and thus, was guilty of this offense beyond a reasonable doubt. The Law Division judge

10

therefore denied counsel's motion and affirmed defendant's municipal conviction and sentence.

Defendant appealed, arguing the following single point for our consideration:

> POINT I
>
> THE SUPERIOR COURT ERRED IN FINDING THAT DEFENSE COUNSEL'S REPRESENTATION OF THE DEFENDANT WAS SUFFICIENT DESPITE COUNSEL'S FALL AND INJURY IMMEDIATELY PRIOR TO THE TRIAL.

Appellate review of a de novo conviction in the Law Division, following a municipal court appeal, is "exceedingly narrow." State v. Locurto, 157 N.J. 463, 470 (1999). We focus on "whether there is 'sufficient credible evidence . . . in the record' to support the trial court's findings." State v. Robertson, 228 N.J. 138, 148 (2017) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)).

Further, under the "two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." State v. Reece, 222 N.J. 154, 166 (2015) (quoting Locurto, 157 N.J. at 474). Our function is limited to determining whether the findings made by the Law Division "could reasonably have been reached on sufficient credible

evidence present in the record." Locurto, 157 N.J. at 471 (quoting Johnson, 42 N.J. at 161-62). "[I]f the appellate tribunal is thoroughly satisfied that the finding is clearly a mistaken one and so plainly unwarranted that the interests of justice demand intervention and correction," then we can independently make new factual findings. Ibid. (quoting Johnson, 42 N.J. at 161-62).

As a preliminary matter, we agree with the Law Division judge's characterization of counsel's appeal as "unique" given that counsel raises an ineffective assistance of counsel claim seemingly on his client's behalf solely based on his own certification. Defendant and counsel argue counsel should not have tried the case because he had suffered a fall immediately preceding the trial, which impacted his ability to represent defendant effectively. Counsel avers that the "decision to try the case was ineffective assistance," because defendant's exposure was to a four-year loss of license, rather than the one-year loss of license, which was the plea offer the State had offered.

We reject these arguments and affirm the Law Division's denial of his petition for post-conviction relief for the reasons expressed in the court's thorough and well-reasoned decision. We note that neither the municipal court nor the Law Division judge found these arguments persuasive. In fact, the judges found these arguments were belied by the trial record, which showed

12

counsel's performance satisfied any objective standard of reasonableness. In reaching this decision, the judge discussed counsel's effective cross-examination of the State's witnesses, his exploration of issues and his attention to defendants due process rights.

In particular, the Law Division judge found no showing at all that counsel's performance was deficient and concluded defendant's rejection of the State's plea offer to a one-year license suspension was indicative of "rolling the dice," concluding that "he had multiple opportunities to take the plea if he had wanted to." Based on this record, we are hard-pressed to conclude counsel's representation of defendant was constitutionally deficient because he did not persuade his client to accept a more favorable plea offer. Strickland, 466 U.S. at 689.

Like the Law Division judge, we are unpersuaded by counsel's argument that had he not suffered the apparent injury, he would have been able to convince defendant to accept the State's offer when in fact, the same offer had been extended and rejected by defendant multiple times prior to trial.

In sum, notwithstanding counsel's admission of ineffective representation, the State established defendant's guilt beyond a reasonable doubt. Defendant was found asleep in a vehicle with the ignition running, failed the field sobriety

13

tests, and later refused a breathalyzer test after having been advised that he had no legal right to do so and if he did, he would be charged with refusal. He also did not have an interlock device in his vehicle although he had been ordered to do so prior to his arrest. Under these circumstances, we are satisfied the court properly affirmed defendant's conviction of these charges and imposed an appropriate sentence.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-2575-24